**STATE of Texas ex rel. Sam D. MILL-SAP, Jr., Criminal District Attorney, Bexar County, Petitioner,**

v.

**R. Robert LOZANO, Judge County Court at Law No. 6, Bexar County, Respondent.**

**No. 69451.**

Court of Criminal Appeals of Texas, En Banc.

June 19, 1985.

Sam D. Millsap, Jr., Dist. Atty., Kirk Sherman and Charles Estee, Asst. Dist. Attys., San Antonio, for petitioner.

Robert A. Valdez, Gary M. Burton, Leo Dougherty, San Antonio, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

We granted leave to file petitioner's original application for writ of mandamus, pursuant to Article V, § 5, Texas Constitution, to order a trial judge to vacate his orders recusing another county court at law judge from the trial of a criminal case after the completion of the guilt and penalty stages of the trial in the second judge's court.

The issue is involved in a highly unusual fact situation—a multi court situation—a real believe it or not with due apologies to Ripley. *Collier v. State*, 297 S.W.2d 160, 162 (Tex.Cr.App.1957) (Davidson, J., Dissenting Opinion).

The record shows Joe D. Neaves, III was charged with the penal offense of driving while intoxicated in County Court at Law No. 4 of Bexar County in Cause No. 311990. His first [1] jury trial in said court on said charge commenced on January 15, 1985. During the trial the court granted Neaves' motion for mistrial.[2] The case was reset for March 4, 1985. On February 27, 1985, Neaves, less than 10 days before the new trial date, filed a motion to recuse Judge Jay Miller, the duly acting and elected judge of County Court at Law No. 4. Said motion referred to the basis for the earlier mistrial, see footnote No. 1, and asserted Judge Miller was guilty at the first trial of "neglect of duty" under Article 2.03, V.A.C.C.P., in permitting the prosecutor to refer to the defendant's presumption of innocence as "fiction," alleged "insubstantial grounding of Judge Miller in basic tenets of rudimentary law," and made reference to the complaint pending before the State Judicial Conduct Commission regarding Judge Miller's conduct at the first trial filed by counsel for the defendant Neaves.

The recusal motion prayed "the Trial Judge request the Presiding Judge in Bexar County, Texas, to assign a judge of one of the County Courts at Law of Bexar County, Texas, to hear this motion to recuse said Trial Judge from this case, and, upon a hearing grant the defendant's Motion to Recuse and Disqualify the Trial Judge."

1. There is some indication there may have been a previous trial, but this trial is repeatedly referred to as the first jury trial throughout the record.

2. It appears that on January 16, 1985, the judge, attorneys and defendant retired to the judge's chambers to discuss a legal question out of the hearing of the jury. The jurors were left in the box and a police-officer witness was left on the witness stand. On January 18, 1985 Neaves moved for mistrial, bringing forth a witness who testified on January 16, 1985, he was in the courtroom after the judge and parties had retired to chambers, and that police officer-witness Eddie Wright initiated a conversation with the jurors stating that "attorneys twist things around." The court denied the mistrial motion, but inquired of the jurors if any of them had heard the officer's comments. Three jurors responded by raising their hands. The jury was instructed to disregard. After a recess Neaves offered other witnesses who were in the courtroom at the time. They related the officer had made twisting motions with his hands and engaged in conversation with jurors and particularly with one juror who failed to raise his hand in response to the court's earlier inquiry. The motion for mistrial was renewed and granted by the court.

Judge Miller declined to recuse himself, and on the same date, February 27, 1985, a "Case Setting Form" for a hearing on the motion to recuse was filled out setting a hearing on said motion in County Court at Law No. 1 of Bexar County on March 1, 1985. The form was not signed by any judge. It was signed by the prosecutor. The bailiff in County Court at Law No. 4 signed for the defendant adding after his signature "Leo refused to sign" apparently referring to Leo Dougherty, counsel for Neaves.

On February 28, 1985, counsel for Neaves presented a "Motion and Order for Assignment of Defendant's Motion to Recuse or Disqualify Judge" to R. Robert Lozano, Judge of the County Court at Law No. 6 of Bexar County and "acting as Criminal Presiding Court of Bexar County."

Said motion informed Judge Lozano of the filing of the recusal motion and assignment of the motion to another court and claimed the "Case Setting Form" was a nullity. Judge Lozano as "Judge of the Criminal Presiding Court" was requested to hear the motion to recuse Judge Miller or assign the motion to another county court at law. Judge Lozano set the motion for a hearing in his court on March 12, 1985, and ordered all proceedings in Cause No. 311990 in the County Court of Law No. 4 suspended until disposition of the recusal motion.

The next day, March 1, 1985, Judge Anthony Ferro of County Court at Law No. 1 of Bexar County conducted a hearing on the motion to recuse. The defendant Neaves was not present nor was his lead counsel, Leo Dougherty. It appears co-counsel, Robert Valdez, was asked to step into the courtroom from the hallway as he passed by. Judge Ferro overruled the motion, finding Judge Miller qualified.

Although the record is not as clear as it could be, it appears that on March 4, 1985, the defendant Neaves failed to appear for trial in County Court at Law No. 4. Judge Miller ordered the bond forfeited and Neaves arrested. It appears Neaves was located in his attorney's office and brought to the courtroom. About this time Neaves' attorney presented an order to Judge Miller from the Fourth Court of Appeals granting Neaves' motion for leave to file a petition for writ of prohibition and issuing a Temporary Restraining Order to Judge Miller requiring he take no further judicial action in the cause which might affect the subject matter of the action pending an inquiry into the propriety of the issuance of a writ of prohibition. Neaves was ordered to county jail by Judge Miller and was taken to the Sheriff's office. It then appears Neaves' counsel obtained a writ of habeas corpus from the 187th District Court ordering Neaves' release on bond pending a hearing in that court.[3] Neaves was released. Later in the day on March 4, 1985, the Court of Appeals issued an order withdrawing its former action for the want of jurisdiction. It appears subsequently Judge Miller and Judge Priest of the 187th District Court conferred, and Neaves and his counsel were advised by Judge Priest to be in Judge Miller's court the next day, March 5, 1985. On that date, the second trial of Neaves commenced in County Court at Law No. 4. Neaves was found guilty by a jury and punishment was assessed by Judge Miller, who presided at the second trial, at 45 days in county jail and a fine of $500.00. Formal sentencing was then deferred to April 19, 1985.

On March 12, 1985, after the completion of the second trial, Judge Lozano of County Court at Law No. 6, conducted a hearing on the motion to recuse Judge Miller which he had previously set. At the hearing Neaves called witnesses as to news stories published during the second trial and at-

---

3. It is shown by the record that when the order of Judge Pat Priest of the 187th District Court was presented to the Sheriff's office, a deputy inquired if Judge Priest was on the Court of Appeals, and was assured he was not. The deputy then explained that the Sheriff's office had been instructed by the district attorney's office not to honor any order of the Court of Appeals.

tributed by reporters to interviews with Judge Miller. There was also testimony as to a television interview of Judge Miller while in his robes and in view of the jurors in the second trial, the judge's conduct prior to holding defense counsel Dougherty in contempt, his conduct with co-counsel Valdez after the adjournment of court on one day during the trial, and his placing certain individuals under the Rule who were not fact witnesses. A transcription of the court reporter's notes from the first trial indicating the prosecutor's remark during voir dire examination about the presumption of innocence and the court's ruling thereon was offered.

Throughout the hearing the State argued Judge Lozano was without jurisdiction to entertain the motion.

At the conclusion of the hearing Judge Lozano made the following oral ruling:

"THE COURT: On this motion, which is cause or case No. 311,990, the Motion and Order For Assignment of Defendant's Motion To Recuse or Disqualify Judge, I'm going to at this time grant the motion. And I want to state that I'm doing this because it puts me in one hell of a spot to recuse a judge that is on the same level and has the same jurisdiction that I do.

"As to the jurisdiction for the hearing itself, I am going to quote 18a, which says 'in any court.' And as to the opening and the mootness of this, I'm going to follow 3712, the first sentence. And that's going to be the ruling of the Court.

"Now, let me state further, for the record, that there's no way in the world that I can find in the law books that allows me, as a county judge, to enforce this recusal order, and I'm not going to make any statements about this matter, because I feel sure it's not through, and that—whatever way, I would have ruled it would be going up, anyway.

"So if that's it that's it, but I'm not going to make any statements, because I think this thing has more ramifications than you can shake a stick at. Okay, sir.

"MR. DOUGHERTY: We've prepared an order, Your Honor.

"THE COURT: Okay. Somebody better.

"MR. DOUGHERTY: Yes, sir."

Thereafter the relator filed his original application for writ of mandamus in this Court. Leave to file such application was granted on April 11, 1985, and this Court ordered all further proceedings in Neaves' criminal case stayed pending final resolution of the said application.

We turn now to the law of disqualification and recusal.

"The common law of disqualification of judges was clear and simple: a judge was disqualified for direct pecuniary interest and for nothing else * * * Blackstone rejected absolutely the possibility that a judge might be disqualified for bias as distinguished from interest * * *.

"In short, English common law practice at the time of the establishment of the American court system was simple in the extreme. Judges disqualified for financial interest. No other qualifications were permitted."

Interpretive Commentary, Article V, § 11, Texas Constitution. See also 1 R. McDonald, Tex.Civil Practice, § 1.22.1 (1965).

All Texas state constitutions since 1845 have expressly limited the grounds for the disqualification of judges. See Tex. Const., Art. IV, § 14 (1845); Tex. Const., Art. IV, § IV (1861); Tex. Const., Art. IV, § 12 (1866); Tex. Const., Art. V, § 11 of the present Constitution (1876), specifically enumerates the only grounds for disqualification.

Article V, § 11 of the Texas Constitution provides in part:

"No judge shall set in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

There are also statutory grounds for disqualification. Article 30.01, V.A.C.C.P.;[4] Article 15, V.A.C.S.;[5] and Article 2378, V.A.C.S.,[6] which in large measure codify the constitutional grounds. See *Lee v. State*, 555 S.W.2d 131 (Tex.Cr.App.1977).

It has been held that the constitutional grounds of disqualification of judges are exclusive, that is, they specify all the circumstances that forbid a judge to sit. *Williams v. State*, 492 S.W.2d 522, 524 (Tex. Cr.App.1973); *Ex parte Largent*, 162 S.W.2d 419 (Tex.Cr.App.1942), *cert. den.* 317 U.S. 668, 63 S.Ct. 72, 87 L.Ed. 536. See also *Taylor v. Williams*, 26 Tex. 583, 587 (1863); *Galveston & H. Inv. Co. v. Grymes*, 94 Tex. 609, 63 S.W. 860, 64 S.W. 778 (1901); *Love v. Wilcox*, 28 S.W.2d 515, 518 (Tex.1930).[7] And in addition to the grounds enumerated by the State Constitution being both inclusive and exclusive, it has been held that mere bias and prejudice are not disabling factors under the Constitution. *Chilicote Land Company v. Houston Citizens Bank & Trust Co.*, 525 S.W.2d 441 (Tex.Civ.App.—El Paso 1975, no writ).

Under this line of cases it was held that when the question of disqualification is raised, the determination of the issue is to be made by the judge sought to be disqualified in the first instance. *Slaven v. Wheeler*, 58 Tex. 23 (Tex.1882); *Kahanek v. Galveston, H. & S.A. Ry. Co.*, 72 Tex. 476, 10 S.W. 570 (1889). See also *Henderson v. Lindley*, 75 Tex. 185, 12 S.W. 979 (1889); *Benson v. State*, 39 Tex.Cr.R. 56,

44 S.W. 167 (1898); *Wright v. Sherwood*, 37 S.W. 468 (Tex.Civ.App.1896, error ref.); *Ferguson v. Chapman*, 94 S.W.2d 593 (Tex.Civ.App.—Eastland 1936, writ dismissed).

"It is not necessary under either the Texas Constitution or the Code of Criminal Procedure that the judge, claimed to be disqualified, seek an independent determination of his impartiality in the cause by another judge." 21 Tex.Jur. 3rd, Crim.Law, § 1863, p. 773; *Zima v. State*, 553 S.W.2d 378 (Tex.Cr.App.1977).

And it has also been said that a judge is presumed to be qualified until the contrary is shown. *Marsh v. Ferguson*, 262 S.W. 805 (Tex.Civ.App.—Waco 1924, no writ); *Quarles v. Smith*, 379 S.W.2d 91 (Tex.Civ. App.—Houston 1964, writ ref'd. n.r.e.). And the contrary can only be shown on a motion to disqualify before that same judge, based on strict constitutional grounds, *Quarles v. Smith*, supra. In *Maxey v. Citizens Nat. Bank of Lubbock*, 489 S.W.2d 697 (Tex.Civ.App.1972),[8] it was observed that the presumption of integrity accompanying act performed by judge under sanction of official oath cannot be overcome by inference, conjecture or speculation; challenge of disqualification must be by allegations of fact of positive and unequivocal character.

Under this line of cases the question of the constitutional disqualification of the trial judge may be raised at any time. 21 Tex.Jur.3rd, Criminal Law, § 1862, pp. 772–

---

**4.** Article 30.01, V.A.C.C.P., provides:

"No judge or justice of the peace shall set in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree."

**5.** Article 15, V.A.C.S., provides:

"No judge or justice of the peace shall set in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case."

**6.** Article 2378, V.A.C.S., provides:

"No justice of the peace shall set in a cause where he may be interested, or where he may be related to either party within the third degree by consanguinity or affinity."

**7.** Because of the obligatory disqualification provision in the Constitution, the *expressio unius* rules apply with special strictness in Texas. *McInnes v. Wallace*, 44 S.W. 537 (Tex.Civ.App. 1898). Texas case law has developed around a strong insistence on the letter of the constitutional disqualification. *Lindsley v. Lindsley*, 152 S.W.2d 415 (Tex.Civ.App.—Dallas 1941), *rev. other grounds*, 139 Tex. 512, 163 S.W.2d 633 (1942).

**8.** *Reversed on other grounds*, 507 S.W.2d 722 (Tex.1974).

773; 33 Tex.Jur.2d, Judges, § 60, and cases there cited.

Against this background came the Code of Judicial Conduct. On September 1, 1974, the Texas Supreme Court adopted such Code. Code of Judicial Conduct, Article 320a–1, V.A.C.S., Title 14, app. 13 (Vernon's Supp.1980–81), Canon 3(C), a provision for *self-recusal* entitled "Disqualification" expressly states under what circumstances a judge should excuse himself from the case. The Code thus enlarged the grounds for *voluntary* "disqualification" by providing in Canon 3(C):

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to, instances where:

"(a). He has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(b). He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"(c). He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or is a party to the proceedings, or any other interest that could be substantially affected by the outcome of the proceeding. . . ."

Prior to the adoption of the said Code, Texas courts had referred to similar provisions of the American Bar Association's Canons of Judicial Ethics, but observed such Canons did not at that time have the status of law in Texas. *Maxey v. Citizens Nat'l. Bank,* 489 S.W.2d 697 (Tex.Civ.App. —Amarillo 1972), *rev'd. on other grounds,* 507 S.W.2d 722 (Tex.1974); *McKnight v. State,* 432 S.W.2d 69, 72 (Tex.Cr.App.1968) (footnote # 1).

After the adoption of the Texas Code of Judicial Conduct, the El Paso Court of Civil Appeals in *Chilicote Land Company v.*

*Houston Citizens Bank and Trust Company,* 525 S.W.2d 941 (Tex.Civ.App.—El Paso 1975, no writ), commented regarding the Code:

"Further, the Code of Judicial Conduct with its Canon 3, subsection c, became effective on September 1, 1974, prior to the entry of the summary judgment. Its adoption by the Supreme Court establishes the rule when a judge now disqualifies he is without power to act for broader reasons than existed heretofore."

Even after the adoption of the Code, however, a violation of the Code has not necessitated a reversal of judgment. *Shapley v. Texas Dept. of Human Resources,* 581 S.W.2d 250, 253 (Tex.Civ.App. —El Paso 1979, no writ).

The adoption of the Code was undoubtedly a step towards a concept of fairness, a concept of recusal to be distinguished from the concept of strict constitutional disqualification.

In 1975 Article 30.03 (county judge disqualification) was amended. It provides in part:

"Section 1. When the judge of the county court or *county court at law,* or of any county criminal court, is disqualified *in any criminal case* pending in the court of which he is judge, the parties may by consent agree upon a special judge to try such case. If they fail to agree upon a special judge to try such case, on or before the third day of the term at which such case may be called for trial, the practicing attorneys of the court present may elect from among their member a special judge who shall try the case. The election of the special judge shall be conducted in accordance with the provisions of Article 1887, et seq. V.A.C.S." (Acts 1975, 64th Leg., p. 1191, ch. 448, Sec. 2, eff. June 19, 1975).

It is observed that the statute applies only to county courts and only to criminal cases pending therein. Article 30.02, V.A. C.C.P., has provided since the enactment of the 1965 Code that the fact of disqualification of a district judge shall be certified to

the Presiding Judge of the Administrative District who shall assign a judge to try the case in accordance with Article 200a, V.A.C.S.

Then in August of 1977 along came the amendment to Article 220a, § 6, V.A.C.S. (Acts 1977, 65th Leg., p. 1060, ch. 389, § 1, eff. Aug. 29, 1977). Buried deep in § 6 is the proviso *"a district judge* shall request the Presiding Judge [9] to assign a judge of the Administrative District to hear any motions to recuse such district judge from a case pending in his court." (Emphasis supplied.) By express statutory language § 6 applies only to district judges. It appears that a party desiring to have a district judge recuse himself from a case must by motion to recuse request the judge to initiate the recusal procedure.[10]

In 1979 the Texas Supreme Court in *McLeod v. Harris,* 582 S.W.2d 772 (Tex. 1979), a mandamus action, held the requirements of Article 200a, § 6, were mandatory and a district judge must request the presiding judge to assign a judge to hear any motion to recuse. The opinion points out that statute does not guarantee the disqualification or recusal of the challenged district judge, but only ensures another judge will determine the merits of the motion. In footnote 3 of the said opinion the Court spoke of the constitutional basis for disqualification of a judge (Article V, § 11, Tex. Const.) being "implemented" by Article 15, V.A.C.S., Article 30.01, V.A.C.C.P., and Canon 3 C of the Texas Code of Judicial Conduct.[11]

In *Robb v. Robb,* 605 S.W.2d 390 (Tex. Civ.App.—El Paso, no writ), the trial court was reversed for failing to follow the procedural mandate of Article 200a, § 6, although the alleged ground for recusal was not constitutional. The appellate court reluctantly followed *McLeod.* The Court wrote:

"These grounds of disqualification (constitutional and statutory) of a judge have long been held to be both inclusive and exclusive ... all of this has now been changed by the Supreme Court's decision in *McLeod v. Harris ...* We are bound by that decision and follow it in this case, but we are not precluded from questioning its soundness, for the Constitution cannot be amended by judicial fiat. Or, if we misconstrue the opinion, and bias and prejudice and the Code of Judicial Conduct are not grounds for disqualification of a judge, then what reason is there for mandating a hearing on a motion alleging such cases to recuse?" See also *The Society of Separationists, Inc. v. Strobel,* 593 S.W.2d 855, 856 (Tex.Civ.App.—Austin 1980, no writ). Cf. *Wiegand v. Wiegand,* 606 S.W.2d 352 (Tex.Civ.App.—San Antonio 1980, no writ).

In *River Road Neighborhood Ass'n. v. South Texas Sports, Inc.,* 673 S.W.2d 952 (Tex.App.—San Antonio 1984, no writ), the Court stated:

"We cannot impute to Justice Barrow an intention to bury in a footnote a hold-

---

**9.** Reference is to the Presiding Judge of the Administrative District.

**10.** For an interesting critical analysis of Article 200a, § 6, as amended in 1977, see Elmo Schwab's "Who Determines Judicial Disqualifications?" 43 Tex.B.J. 197 (1980). Schwab points out the statutory provision destroys the presumption of qualification the well settled law that the determination of disqualification is to be made by the trial judge in the first instance, does not require the motion to recuse to be under oath, based on good cause, or upon legally sufficient grounds, and is subject to the possibility of great abuse.

**11.** One author viewed this opinion as broadening the grounds for disqualification set out in the Constitution to include those under Canon

3C which is expressly not exclusive. Sam Sparks: "Judicial Recusal: Rule 18a—Substance or Procedure," St. Mary's Law Journal, No. 3, Vol. 12, p. 723 (1981). See, however, *Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984); Calvert, *Disqualification of Judges,* 47 Tex.B.J. 1330 (Dec. 1984). In his bar journal article former Chief Justice Robert W. Calvert in discussing *Manges* stated at p. 1337:

"The opinion seems to the writer to leave not the slightest doubt that the only grounds for disqualification of a judge are those listed in art. 5, Sec. 11, of the Constitution, and the grounds set out in Canon 3C(1) should not be considered in the future as grounds for disqualification."

ing that the Constitution may be amended by a code governing the conduct of judges which has been promulgated by the Supreme Court. Clearly, such a holding would require prominent display in the body of the opinion."

In *McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Cr.App.1983), the Court of Criminal Appeals held that Article 200a, § 6, V.A.C.S., applies to criminal cases in the absence of any explicit or implicit legislative intent indicating otherwise. There, however, this Court held that though the trial judge erred in not following the statute no bias on the part of the judge was shown from the complete record. The Court held that before the statute comes into play "in criminal cases" an obvious requirement is that the motion to recuse must allege proper grounds upon which the motion could be sought in the first place.

Next, along came the adoption of Rule 18a, Texas Rules of Civil Procedure, which was added by order of June 10, 1980, eff. Jan. 1, 1981. It was later amended by order of December 15, 1983, eff. April 1, 1984. This rule as originally written applied only to district courts. Rule 18a now provides:

"(a) At least ten days before the date set for trial or other hearing in any court other than a Court of Appeals or the Supreme Court, any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case. The grounds may include any disability of the judge to sit in the case.

"(b) On the day the motion is filed, copies shall be served on all other parties or their counsel of record, together with a notice that movant expects the motion to be presented to the judge three days after the filing of such motion unless otherwise ordered by the judge. Any other party may file with the clerk an opposing or concurring statement at any time before the motion is heard.

"(c) Prior to any further proceedings in the case, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion. If the judge recuses himself, he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit, and shall make no further orders and shall take no further action in the case except for good cause stated in the order in which such action is taken.

"(d) If the judge declines to recuse himself, he shall forward to the presiding judge of the administrative judicial district, in either original form or certified copy, an order of referral, the motion, and all opposing and concurring statements. Except for good cause stated in the order in which further action is taken, the judge shall make no further orders and shall take no further action in the case after filing of the motion and prior to a hearing on the motion. The presiding judge of the administrative judicial district shall immediately set a hearing before himself or some other judge designated by him, shall cause notice of such hearing to be given to all parties or their counsel, and shall make such other orders including orders of interim or ancillary relief in the pending cause as justice may require.

"(e) If within ten days of the date set for trial or other hearing a judge is assigned to a case, the motion shall be filed at the earliest practicable time prior to the commencement of the trial or other hearing.

"(f) If the motion is denied, it may be reviewed for abuse of discretion on appeal from the final judgment. If the motion is granted, the order shall not be reviewable, and the presiding judge shall assign another judge to sit in the case.

"(g) The Chief Justice of the Supreme Court may also appoint and assign judges in conformity with this rule and pursuant to Article 200a."

See Rule 18b as applicable to recusal of a justice of the Supreme Court and the Courts of Appeals.[12]

"Rule 18a ... brings a new dimension to this subject" of judicial recusal. Jack Pope and Steve McConnico, "Practicing Law with the 1981 Texas Rules, 32 Baylor L.Rev. 489, 490 (1980). The rule is clear that at least ten days before the date set for trial or other hearing the party may file a motion stating grounds why the trial judge should not set in the case, and the courts may include any disability of the judge to sit in the case.

Two significant points of the rule should be noted. First, the filing of a recusal motion under the rule abates the power of the judge to act except for "good cause stated" in any order entered. Second, the rule requires the setting out of the grounds for the alleged recusal, but this "may include any disability of the judge in the case." This would appear to enlarge the permissible scope for removal by the assigned judge beyond the constitutional grounds or the Code of Judicial Conduct.[13]

With this backdrop we return to the facts of the instant case. Judge Miller of County Court at Law No. 4, where the D.W.I. case was pending, declined to recuse himself or to request "the Presiding Judge of Bexar County, Texas" to assign another judge to hear the motion to recuse filed by the defendant Neaves. Thereafter Neaves, on his own, filed a motion asking for assignment of a county court at law judge to hear the motion to recuse Judge Miller. The motion was presented to Judge Lozano, Judge of County Court at Law No. 6, "acting as Criminal Presiding Court of Bexar County."

Although the D.W.I. prosecution was pending in another court of equal jurisdiction, and there was no order of transfer or referral, or order of reassignment of the cause, Judge Lozano set the motion for hearing in his court 13 days later. He also entered an order suspending all other proceedings in the criminal prosecution in County Court at Law No. 4 pending the "outcome" of the said motion. The orders were signed by Judge Lozano as Judge of County Court at Law No. 6 and as "Judge of the Criminal Presiding Court of Bexar County, Texas." [14]

Judge Miller ignored the suspension order and the D.W.I. case proceeded to trial. After the bifurcated trial had been completed, but before formal sentencing in County Court at Law No. 4, Judge Lozano heard the "recusal" motion. If it can be stated that the "recusal" motion, as originally filed, stated sufficient grounds for disqualification or recusal, the evidence offered did little to support the allegations. The evidence offered generally referred to acts of Judge Miller at the second trial, not to the previous allegations. Judge Lozano granted the recusal motion.

By his answer filed herein the respondent, Judge Lozano, now argues he had the

12. Rules 18a and 18b are not the first rules the Supreme Court has promulgated to afford a trial before a different judge. See Rule 528, Texas Rules of Civil Procedure, relating to Justice of the Peace Courts.

13. Clearly many problem areas remain. As originally enacted, Rule 18a(a) related only to district courts, but the amendment to (a) made it applicable "in any court other than a Court of Appeals or the Supreme Court." Nevertheless, subsection (d) still provides the judge who declines to recuse himself, "shall" forward to the Presiding Judge of the Administrative District an order of referral, etc. Said presiding judge "shall" immediately set the hearing on the motion before "himself" or some other judge designated by him. The said presiding judge must be a district judge. See Article 200a, V.A.C.S. May he assign "himself" or another district judge to sit at a hearing on a motion to recuse in a justice or municipal court or county or county court at law court? Rule 18a(g) provides the Chief Justice of the Supreme Court may also appoint and assign judges in conformity with the rule and pursuant to Article 200a (applicable only to district courts). It is not clear just when and how the authority of the Chief Justice is to be invoked where the judge who declines to recuse himself is mandatorily required to forward the order of referral to the Presiding Judge of the Administrative District. For an interesting background of Rule 18a see Luther H. Soules, III: "Rule 18a: Recusal or Disqualification of Trial Judge," 43 Tex. Bar Journal 1005 (1980).

14. The record shows the assignment as "Criminal Presiding Court" passed to another court the day after the orders were entered.

authority to hear the recusal motion, and he was compelled to do so by statute and local rules citing Article 1970–75a, §§ 2 and 3, V.A.C.S., and Article 1970–301e.2, § 8, V.A.C.S.

Article 1970–75a, §§ 2 and 3, provides that in January and July of each year the judges of the county courts at law of Bexar County shall select "one" of their number to be "presiding judge." Such action is to be entered upon the minutes of each court. Such judge may assign and transfer a case from one such court to another and may assign a judge of such court to another case, etc. The judges may also adopt rules, not inconsistent with the Texas Rules of Civil Procedure and the Code of Criminal Procedure. Article 1970–301e.2, § 8, refers to the fact that cases are docketed and filed in the order and manner determined by a majority of the judges of the county courts at law of Bexar County and the judge of the county court.

At the hearing before Judge Lozano the only evidence offered relating to local procedure was an uncertified chart signed only by a "Chief Coordinator" reflecting which courts were designated "Civil Presiding Court" and which courts were designated "Criminal Presiding Court" for the years 1984 and 1985. The chart indicates the schedule was approved "in a general meeting in 1984." The chart does not indicate a careful compliance with Article 1970–75a. It does show County Court at Law No. 6 was the "Criminal Presiding Court" for February, 1985, but it does not show Judge Lozano was the "presiding judge" for all the said county courts at law on February 28, 1985. No local rules, if any, were introduced nor any testimony concerning the same offered. Thus there is no showing of any local rules, consistent with the Rules of Civil Procedure and the Code of Criminal

Procedure, which would authorize Judge Lozano's actions.

Article 4.16, V.A.C.C.P., provides:

"When two or more courts have concurrent jurisdiction of any criminal offense, the court in which an indictment or complaint shall first be filed shall retain jurisdiction except as provided in Article 4.12." [15]

■ Certainly Judge Lozano as a judge of a court of equal jurisdiction as that of Judge Miller where the criminal case or offense was pending did not have jurisdiction to recuse Judge Miller. The jurisdiction of Judge Miller's court was first invoked by the filing of the criminal pleadings, *Ex parte Clear*, 573 S.W.2d 224 (Tex.Cr.App.1978). Thus, that court obtained sole jurisdiction over the case to exclusion of all other courts, *Flores v. State*, 487 S.W.2d 122 (Tex.Cr.App.1972), unless another court's authority over any subject matter in the case can be clearly established.

As has been seen Articles 1970–75a, §§ 2 and 3, and 1970–301e.2, § 8, V.A.C.S., do not furnish a legal basis for Judge Lozano assuming jurisdiction as he did.

■ Still further, the D.W.I. trial had been completed except formal sentencing before Judge Lozano ordered Judge Miller recused. A question of mootness was thus presented when Judge Lozano acted in a quasi appellate capacity.[16] Since the trial had occurred it was impossible to grant the relief requested, that of a trial before a different judge. The issue was moot as no relief was possible. See *James v. City of Round Rock*, 630 S.W.2d 466 (Tex.App.— Austin 1982, no writ). A court lacks jurisdiction if it lacks the power to render the particular relief awarded or the issue is moot. See *Kolsti v. Guest*, 576 S.W.2d 892 (Tex.Civ.App.—Tyler 1979, no writ).

15. Article 4.12, V.A.C.C.P., deals with certain misdemeanor cases to be tried in justice court and thus is not here applicable.

16. In making his oral ruling Judge Lozano recognized the issue of mootness and stated he was

going "to follow 3712, the first sentence." Neither Article 3712, V.A.C.S., or Article 37.12, V.A.C.C.P., appear applicable. There is no § 37.12 in the Penal Code.

■ In announcing his oral decision, Judge stated he was relying upon "18a," obviously referring to Rule 18a, Texas Rules of Civil Procedure. First, it is not clear that the rule applies to criminal cases. Cf. *McClenon v. State*, supra, footnote # 2.[17]

■ Further and most importantly, under the rule that after the trial judge declines to recuse himself the matter *shall* be referred to the Presiding Judge of the Administrative District, a district judge (Article 200a, V.A.C.S.). The referral cannot be to another county court at law judge, no matter what his position under local statutes or rules. Rule 18a simply will not support Judge Lozano's actions.

And as earlier noted, Article 200a, § 6, expressly has application only to district courts, and cannot be used to support Judge Lozano's position.

■ We turn now to the question of whether the writ of mandamus is a proper remedy for this type of case. The amendments to Article V, § 5 of the Texas Constitution, gives this Court jurisdiction to issue, among other things, writs of mandamus in all criminal matters. See *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App. 1978); *State ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978); *Texas Board of Pardons and Paroles v. Miller*, 590 S.W.2d 142 (Tex.Cr.App.1979). The instant D.W.I. prosecution is a criminal matter.

■ The writ of mandamus is an extraordinary writ, and to justify this extraordinary remedy the petitioner for a writ of mandamus must meet a two-fold test. *State ex rel. Vance v. Routt, supra.* First, there must be no other adequate legal remedy available to the petitioner. *State ex rel. Holmes v. Denson*, 671 S.W.2d 896 (Tex.Cr.App.1984). Second, the relief sought must be in the nature of a ministerial act by the respondent, as op-

posed to a discretionary one. See generally *Ordunez v. Bean*, 579 S.W.2d 911 (Tex. Cr.App.1979); *Texas Board of Pardons and Paroles v. Miller, supra.* See also 37 Tex.Jur.2d, Mandamus, § 48.

It has been frequently said the writ of mandamus is available only to those parties who have not an adequate remedy by some form of appeal. *Garcia v. Dial*, 596 S.W.2d 524 · (Tex.Cr.App.1980); *White v. Reiter*, 640 S.W.2d 586 (Tex.Cr.App.1982) (Opinion on remand); *Ex parte Gray*, 649 S.W.2d 640 (Tex.Cr.App.1983).

In *State ex rel. Vance v. Routt*, supra, this Court held that where the State had no right to appeal from a final judgment in a bond forfeiture proceeding, it had "no other adequate remedy to challenge the actions of the trial court."

In the instant case the State, the petitioner, has no right of appeal from the order entered by the respondent, Judge Lozano. The State further argues the order has placed a cloud on a criminal conviction in which it has a vested interest, and that generally in a criminal case the State has no right of appeal. Article V, § 26, Tex. Constitution; Article 44.01, V.A.C.C.P. The first prong of the two-prong test is satisfied.

The second prong is that mandamus is not available to compel a discretionary as distinguished from a ministerial act. See *State ex rel. Vance v. Routt*, supra. In this connection we examine the impact of "jurisdiction" on this question.

"Jurisdiction is power to hear and determine the matter in controversy according to established rules of law, and to carry the sentence or judgment of the court into execution (case cited omitted)." 16 Tex.Jur.2d, Crim. Law, § 191; 22 C.J.S., Criminal Law 107. See also 22 Tex.Jur.3rd, Criminal Law, § 1898, p. 25–26.

---

**17.** If applicable, it is observed that the failure of the party to comply with the ten day notice provision of Rule 18a bars complaint on appeal of the denial of a motion to recuse. *Autry v. Autry*, 646 S.W.2d 586 (Tex.App.—12th Dist.

1983); *Gonzalez v. Gonzalez*, 659 S.W.2d 900 (Tex.App.—8th Dist.1983). In the instant case Neaves did not timely file his motion to recuse in accordance with Rule 18a.

In *Williams v. State,* 170 S.W.2d 482 (Tex.Cr.App.1943), this Court stated "... jurisdiction means the power of the court to hear and to determine the case." See also *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (Tex.1926).

In *Ex parte Armstrong,* 8 S.W.2d 674, 675–676 (Tex.Cr.App.1928), it was stated:

"Jurisdiction may be concisely stated to be the right to adjudicate concerning the subject matter in a given case. * * * Unless the power or authority of a court to perform a contemplated act can be found in the Constitutions or laws enacted thereunder, it is without jurisdiction and its acts without validity."

■ "For a court to act, it must have jurisdiction to do so. This is fundamental." *State v. Klein,* 154 Tex.Cr.R. 31, 224 S.W.2d 250 (Tex.Cr.App.1949). See also *Ex parte Caldwell,* 383 S.W.2d 587, 589 (Tex. Cr.App.1964). Any order entered by a court having no jurisdiction is void. *Ex parte Sandoval,* 318 S.W.2d 64 (Tex.Cr. App.1958). See also *Emery v. State,* 57 Tex.Cr.R. 423, 123 S.W. 133 (Tex.Cr.App. 1909).

"If the court has no jurisdiction, it should proceed no further with the case other than to dismiss it for want of power to hear and determine the controversy. In such a case, any order or decree entered, other than one of dismissal is void." *Hall v. Wilbarger County,* 37 S.W.2d 1041, 1046 (Tex.Civ.App.—Amarillo 1931), *affirmed* 55 S.W.2d 797.

■ In 55 C.J.S., Mandamus, § 97(b)(2), p. 160, it is written:

"On the other hand, mandamus will be to compel a court to vacate a judgment or decree which it was entirely without jurisdiction to make [18] where there is no adequate remedy by appeal or error or otherwise."

In 52 Am.Jur.2d, Mandamus, § 309, pp. 636–637, it is stated:

"... if there is no other adequate remedy, the writ will issue to compel a trial judge to set aside an order that is void as a matter of law, or to expunge from the record an order that is in excess of jurisdiction."

In 52 Am.Jur.2d, Mandamus, § 312, p. 641, it is written:

"A different situation is presented where the want of jurisdiction appears affirmatively on the face of the record, or is otherwise clear as a matter of law. In such case the writ of mandamus will issue to remedy an unauthorized assumption of jurisdiction."

■ As demonstrated earlier, Judge Lozano's court was without jurisdiction to entertain Neaves' motion to recuse Judge Miller or to conduct a hearing and rule thereon. While undoubtedly Judge Lozano acted in good faith, there was no judicial discretion involved. As a ministerial act Judge Lozano should have dismissed the recusal motion when presented. The second prong of the two prong mandamus has been shown. Being without jurisdiction, the order entered after hearing is void and a writ of mandamus may issue to compel vacation of the order or orders entered by Judge Lozano. See *State v. Olsen,* 360 S.W.2d 398, 399 (Tex.1962); *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Cr.App.1980).

■ Even if it could be argued that Judge Lozano's court had jurisdiction, the issue of recusal had become moot by the time Judge Lozano acted. The only proper order which he could have entered was one of dismissal. See *Thomason v. Seale,* 53 S.W.2d 764 (Tex.1932), holding the Texas Supreme Court had jurisdiction to direct issuance of a writ of mandamus to compel a District Judge to dismiss an election contest (over which the district court had jurisdiction) after the issue became moot.

■ The State is entitled to the writ of mandamus.[19] We assume that Judge

---

**18.** See *Firestone v. Hall,* 143 S.W.2d 797 (Tex. Civ.App.1940).

**19.** The State in its application also prayed for the issuance of a writ of prohibition. That writ

issues only to prevent the threatened commission of a future act, and not to undo an act performed, similarly not to review an act which has already been performed, or to annul or

Lozano will vacate his orders and will take no further action unless consistent with this opinion. A writ of mandamus will issue only if he does not do so.

It is so ordered.

CLINTON, Judge, concurring.

Before us is another in a rash of applications invoking the original jurisdiction of this Court for relief by way of an extraordinary writ. Agreeing with both analysis engaged in and rationale applied by the Court, I write out of concern that more and more practitioners are urging the Court to grant some kind of extraordinary relief for reasons derived from decisions on the civil side—though they may be inappropriate in a criminal law matter.

Indeed, in the instant cause petitioner asserts, "Mandamus will issue if there is but *one proper order* ..." [1] and, of course, there is authority for that proposition. It and other rules developed on the civil side may be gleaned from decisions of this and other courts such as *State ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978) and *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119 (Tex.1974). In turn they rely on several authorities, one of the leading of which is *Pope v. Ferguson*, 445 S.W.2d 950 (Tex.1969).

All of those cases and others they discuss deal with the extent to which writ of mandamus may reach to compel a trial judge to render and enter judgment in a given case. Recognizing earlier rules have been modified to a degree, they do talk in terms of a petitioner demonstrating that only one proper judgment could be entered upon the facts found by the trial court. *Pope v. Ferguson*, supra, at 954; *Vance v. Routt*, supra, at 907. But in criminal law matters that kind of rule should be carefully scrutinized before being adopted and

applied by this Court in the exercise of its relatively recent grant of broader jurisdiction, power and authority to issue extraordinary writs.

*Thomas v. Stevenson, Judge*, 561 S.W.2d 845 (Tex.Cr.App.1978), answered the following question:

"[D]oes the Texas Court of Criminal Appeals have jurisdiction to issue writs of mandamus to compel speedy trials under the recent amendment to Article 5, Section 5 of the Texas Constitution?"

Broader than the question, one notes, is the answer, *viz:*

"We therefore conclude that the additional provisions in the amendment gave this Court authority to issue extraordinary writs *including* the power to issue writs of mandamus to compel a speedy trial in a criminal case." *Id.*, at 847.

Having concluded that it had jurisdiction, power and authority to grant relief through writ of mandamus, the Court found that petitioner had sufficiently "raised a prima facie claim," such that it became "the duty" of respondent judge to set the criminal actions for trial "at the earliest possible date consistent with orderly performance of the court's other duties." The Court cited *Fariss v. Tipps*, 463 S.W.2d 176 (Tex.1971) (since Constitution provides for speedy trial of probation revocation proceeding, trial judge "does not have discretion to deny it," *id.*, at 179; rather it is "[his] duty ... to set the proceeding for trial at earliest possible date" et cetera, *id.*, at 180).

Thus the Court fully accepted the new grant of jurisdiction, power and authority to issue extraordinary writs, but it did not undertake to lay down, much less discuss, rules touching its exercise of the right. Instead, it granted relief to an accused because he was similarly situated with an-

---

correct proceedings already terminated. See 73 C.J.S., Prohibition, § 13, p. 45; *LeBlanc v. Gist*, 603 S.W.2d 841 (Tex.Cr.App.1980); *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App. 1973). Thus, under the facts, the State is not entitled to a writ of prohibition.

In concluding that the State is entitled to a writ of mandamus against Judge Lozano, we do

not comment on, and certainly do not indicate approval of the action taken by any of the courts involved in the controversy presented.

1. All emphasis throughout is mine unless otherwise indicated.

other accused for whom the Supreme Court had determined a trial judge had the duty to effectuate his constitutional right to a speedy trial. However, the duty in part is statutorily provided by Article 1734, V.A.C.S., authorizing the Supreme Court to issue the writ of mandamus "to compel a judge of the district court to proceed to trial and judgment in a cause ..." *Fariss v. Tipps*, supra. Since there is no comparable statutory grant of authority to this Court, the question becomes whether this Court possesses it by virtue of the constitutional amendment.

Separately concurring "with the result reached," Presiding Judge Onion recounted the legislative history of the joint resolution that proposed the amendments to Article V, § 5. He explained that among other purposes the particular amendment under consideration was designed expressly "to give the Court of Criminal Appeals the authority to issue writs of mandamus to compel speedy trials in criminal cases in this State." *Id.*, 561 S.W.2d at 847. The reason "in part" was "to correct this anomaly:" as matters then stood an accused seeking a speedy trial was required to apply to the Supreme Court of Texas for relief since, "though a court of generally civil jurisdiction," only it had "general authority to issue the writ of mandamus," but thereafter should it be raised on direct appeal this Court would be called on to decide "whether the accused had been in fact deprived of a speedy trial." *Id.*, at 848.

Given known legislative history, Presiding Judge Onion confidently concluded that the constitutional amendment was selfenacting insofar as to jurisdiction, power and authority of this Court to issue writs of mandamus *on application of an accused* to compel a trial judge to set cases for trial expeditiously. But in the absence of statutory provision or discerned legislative history, what of writs of mandamus against trial judges to compel other actions?

Still in 1978 the Court decided *State ex rel. Vance v. Routt, Judge*, 571 S.W.2d 903 (Tex.Cr.App.1978). That was an original action for mandamus on application by a district attorney to have the Court direct a district judge to vacate a final judgment in a bond forfeiture matter that the State recover of the surety a prescribed amount less than that specified in the bond. The Court reprised the same constitutional developments noticed in *Thomas v. Stevenson*, supra, and then posed the initial question, *viz:*

> "The initial question is ... whether this Court has jurisdiction to issue a writ of mandamus to compel a district judge to set aside a final order of forfeiture in a bond case where the petitioner contends that the trial court had *no authority to enter such a judgment.*" *Id.*, at 905.

Without looking beyond Article V, § 5 the Court found ample general mandamus jurisdiction simply because courts had held that a bond forfeiture proceeding is "criminal in nature." Presumably the constitutional provision was believed to be selfenacting; no statutory implementation is mentioned. The Court then resorted to *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973) and *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119 (Tex.1974), for they were deemed "instructive in determining whether the relief prayed for is a proper subject of mandamus," *id.*, 571 S.W.2d at 906. *Smith v. Blackwell*, supra, involved a writ of prohibition issued by the Court "to enforce its own jurisdiction" when it appeared that a district judge threatened to take action other than to cause the mandate of the Court to be executed; similarly, *Pettit v. Thurmond*, supra, directed a district judge to vacate judgments and sentences entered pursuant to § 4.06(a) of the Texas Controlled Substances Act, it having been held unconstitutional in *Smith v. Blackwell*. With those proceedings in mind the Court reviewed applicable statutes governing bond forfeitures and concluded that clearly "the respondent had *no authority* under these statutes to remit or exonerate any

portion of the bond in question," *id.*, 571 S.W.2d at 907.

Turning then to availability of an adequate remedy at law, the Court pointed out that the State had neither right of appeal against a final judgment of forfeiture nor right to file a motion for new trial, thus "no other adequate remedy to challenge the actions of the trial court," *id.*, at 907. While it is axiomatic that mandamus will not issue to compel a discretionary act as distinguished from a ministerial act, but may issue to compel entry of a judgment, the writ must not specify the kind or character of judgment. However, the Court found on the civil side an exception where "a particular judgment is the only proper one that can be rendered in the circumstances." *Ibid.* (That exception is quoted from 37 Tex.Jur.2d 677, Mandamus, § 48, entitled "Entry of judgment on verdict.")

Therefore, the Court thought that for the State to prevail it must "demonstrate there was only one proper judgment that could be entered and that the entry of the judgment based upon the facts found by the court was in essence a mere ministerial act," citing "See, e.g., *State ex rel. Pettit v. Thurmond*, supra." Finding, again from applicable statutes, "There was only one judgment authorized to be entered," and also that the judge "had no discretion but to enter judgment ... for the full amount of the bond," the Court ordered that writ of mandamus issue. *Id.*, at 908.

In *Vance v. Routt* that the trial court had general jurisdiction, subject matter jurisdiction and personal jurisdiction cannot be gainsaid, and the Court does not purport to dispute that. A concept of jurisdiction common both to civil and criminal law is that it includes power and authority to render and enter the particular relief awarded. *Ex parte Cannon*, 546 S.W.2d 266, 269 (Tex.Cr.App.1976–1977) (Odom concurring); 34 Tex.Jur.2d 196, Judgments, § 269 "Jurisdictional Requisites for Valid Judgment"—"In general." Having found that the statutes denied Judge Routt "authority ... to remit or exonerate any portion of the bond in question," the judgment

under attack was null and void. There was no need to import into this criminal law matter other rules of civil law.

In my judgment there is great risk to respective rights of the parties in a criminal action for this Court to apply rules formulated by the Supreme Court for civil mandamus proceeding for no better reason than the Supreme Court does in civil matters and has in some criminal law matters. Protections afforded in the criminal law should not be abridged in the name of comity.

The general problem of dual mandamus jurisdiction was addressed early on in *Commissioners Court of Nolan County v. Beall*, 98 Tex. 104, 81 S.W. 526 (1904), and resolved in favor of judicial comity between the two courts. *Id.* 81 S.W. at 528–529. If this Court has ever made a reciprocal declaration, it does not come quickly to mind.

More recently and before the 1977 constitutional amendment, in ruling on applications for writs of mandamus in criminal law matters the Supreme Court declared that it would "operate within the procedural framework of the Texas Code of Criminal Procedure as interpreted by the Court of Criminal Appeals, conceding to that court, where possible, every right of supremacy in criminal cases which our constitution intended that it should have." *Pope v. Ferguson*, supra, 445 S.W.2d at 955; *State ex rel. Pettit v. Thurmond*, supra, 516 S.W.2d at 121. However, as both those opinions demonstrate, the Supreme Court took a great deal from its own law of mandamus in civil cases to support much of what it ruled in criminal law matters. For random examples, both cited two decisions, *Wallace v. Briggs*, 162 Tex. 485, 348 S.W.2d 523 (Tex.1961) and *Crane v. Tunks*, 328 S.W.2d 434 (1959), in which mandamus issued to correct "abuse of discretion" on the part of trial judge in rendering *interlocutory orders*, in part because appeal did not lie otherwise. Compare *Reynolds v. Dickens*, Judge, 685 S.W.2d 479 (Tex.App. 1985).

Implicit in the notion of Presiding Judge Onion that the prior situation created an

"anomaly" is a concern that in deciding a speedy trial issue on direct appeal after a decision of the Supreme Court in a mandamus proceeding, upon viewing principles of criminal law by its own lights this Court may find itself in an awkward position of disagreeing with the prior opinion of the Supreme Court and having to render a conflicting opinion. Now that this Court has jurisdiction over extraordinary writs "in criminal law matters," a similar anomaly has been created in relation to decisions of the Supreme Court previously rendered in the exercise of its own mandamus jurisdiction in *criminal as well as civil law matters.*[2]

So far as I have been able to ascertain there is no procedural framework with respect to mandamus within the rules of civil procedure, save and except as to an original proceeding in the Supreme Court under Rule 474 and the bar of Rule 694 against inferior courts granting one without notice. Nor is there any reason to believe that legislative grant of mandamus authority in civil matters to the Supreme Court applies equally to this Court.

"Mandamus is not a writ awarded as a matter of right, nor is it granted as a matter of course. On the contrary, its issuance rests largely in the sound judicial discretion of the court." 37 Tex.Jur.2d 598–599, Mandamus, § 11, Discretion of Court. Accordingly, this Court would be well advised to operate within the procedural framework of the Code of Criminal Procedure, as it interprets the code, conceding to the Supreme Court, where possible, every right of supremacy in experience with mandamus proceedings generally, but not necessarily adopting its rules in civil law matters. All of which means that the rationale of *Pope v. Ferguson,* supra, and its followings is not an appropriate rule in criminal law matters.

Underlying the modified rule is the fact that a trial court possesses and has asserted jurisdiction over the subject matter and developed the facts sufficient to proceed to judgment. That the rules applied in the cases cited above rest on that premise, though not always explicated, is plain from *Pope v. Ferguson.* Thus the lengthy excerpt from *Ex parte Newman,* 14 Wall. 152, 81 U.S. 152, 20 L.Ed. 877 (1897), explaining what "principles and usages of law" are in the situation being addressed, begin with that very basis, *viz:*

> "Applications for a mandamus to a subordinate court are warranted by the principles and usages of law in cases where the subordinate court, *having jurisdiction of a case,* refuses to hear and decide the controversy, or where such a court, having heard the cause, *refuses to render judgment or enter a decree in the case . . .*"

*Pope v. Ferguson,* supra, at 953 (my emphasis).

In the case at bar the Court finds first that the trial court presided over by Judge Miller had "sole jurisdiction over the case to the exclusion of all other courts," and second that jurisdiction obtained unless "authority [of another court] over any subject matter in the case can be clearly established." Then the Court continues to demonstrate that jurisdiction and authority over the case was never reposed in the trial court of Judge Lozano.

If that be true, and I agree it is, then the rule invoked by the State is not applicable. The short answer is that Judge Lozano was without jurisdiction, power and authority to proceed further with the case other than to dismiss the motion to recuse. On that basis I agree with the Court that petitioner is entitled to his writ. *State v. Olsen,* 360 S.W.2d 398, 399, 402 (Tex.1962); *Ex Parte Cannon,* 546 S.W.2d 266, 269 (Tex.Cr.App. 1976) (Odom concurring); see also *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Cr.App. 1980).

**2.** Whether the anomaly continues in criminal law matters depends on how recent constitutional and statutory provisions are construed. See, e.g., Article V, § 3, "Jurisdiction of Supreme Court," and Article 1733, V.A.C.S., "May issue writs;" Article V, § 5, "Jurisdiction of Court of Criminal Appeals," and Article 4.04, § 1, V.A.C.C.P., "Court of Criminal Appeals."

Accordingly, I join the opinion and the judgment of the Court.