The PRIME GROUP, INC.; Prime Group Management of Texas, Inc.; and Prime Property Management of Texas, Ltd., Relators,

v.

The Honorable Jack O'NEILL, Judge of the 152nd Judicial District Court of Harris County, Texas, Respondent.

No. C14–92–01212–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 25, 1993.

Charles R. Haworth, Mike J. Bowers, Dallas, for relators.

R. Michael Peterson, Cynthia R. Levin, Houston, for respondent.

Before ROBERTSON, CANNON and BOWERS, JJ.

## MAJORITY OPINION

CANNON, Justice.

This is an original mandamus proceeding. Relators, The Prime Group, Inc.; Prime Group Management of Texas, Inc.; and Prime Property Management of Texas, Ltd. (collectively "Prime"), ask that we order the trial court to vacate or modify a sanction order awarding the real party in interest, Souper Salad Franchises, Inc. ("Souper Salad"), $33,624.49 in attorneys' fees and costs. We deny the writ.

Souper Salad operated a restaurant in a Dallas shopping mall. It leased space from the owner of the mall, K–P Plaza Limited Partnership and K–P Plaza Dallas, Inc. (collectively "K–P"). Prime handled leasing arrangements for K–P.

Souper Salad sued Prime and K–P for tortious interference with a transaction in which Souper Salad tried to sell the restaurant to a third party.

K–P counterclaimed alleging that Souper Salad fraudulently induced it to agree to a lease modification. K–P contends that Ray Barshick, president of Souper Salad, promised to keep a Souper Salad restaurant in the mall if K–P reduced the rent. Barshick allegedly made this promise to a Prime employee, Vicki Whorton. K–P contends that, despite this promise, Barshick tried to sell the restaurant to a third party who was not going to operate it as a Souper Salad franchise.

The underlying lawsuit is pending. A chronology of events culminating in the sanction order follows:

(1) August 29, 1991—Souper Salad's president, Barshick, allegedly deposes that he promised to Prime's Vicki Whorton that he would keep a Souper Salad restaurant at the mall for the duration of a modified lease, if K–P reduced the rent.

(2) July 24, 1992—Whorton suffers serious, incapacitating eye injury.

(3) July 31—Both sides announce ready for trial. Prime and K–P allegedly intend to rely on Barshick's deposition to establish the promise constituting an essential element of K–P's counterclaim.

(4) Monday, August 10—Trial begins. Opening statements.

(5) Afternoon, August 11—During Souper Salad's presentation of its case, Barshick allegedly recants his deposition testimony regarding the promise. This leads counsel for Prime and K–P to inquire whether Whorton is available to testify.

(6) August 11–13—Souper Salad presents more of its case.

(7) Evening, August 13—Counsel for Prime and K–P learns that Whorton will not be available for weeks due to her eye injury.

(8) August 14

—Counsel for Prime and K–P obtains affidavit from Whorton establishing her nonavailability.

—Souper Salad continues its case.

(9) Saturday, August 15—Both sides go to Dallas to videotape the deposition of a Prime and K–P witness.

(10) Morning, August 17—Souper Salad wraps up its case. Prime and K–P move for directed verdict. After argument, the trial court denies the motion.

(11) Afternoon, August 17—After lunch, Prime and K–P move for continuance or mistrial on grounds that a material witness, Whorton, is unavailable. This is the first time that the trial court or Super Salad know that Whorton is unavailable or indis-

pensible. Hearing on mistrial motion.

(12) August 18—After more argument, the mistrial is granted but subject to Souper Salad's motion for sanctions.

(13) September 14—Souper Salad moves for the sanction of attorneys' fees and costs of trial. It alleges that Prime, K–P, and their counsel should have known of Whorton's nonavailability before trial. It also contends that Barshick did not recant his testimony and that Prime and K–P could not use that as an excuse to declare Whorton indispensible.

(14) September 29—After hearing argument from both sides, the trial court grants Souper Salad's motion for sanctions. The sanction is for $33,-624.49 in attorney's fees and costs of trial from August 11–18, payable on or before December 1, 1992.

(15) October 26—Prime moves for reconsideration of sanction.

(16) November 13—After hearing, sanction sustained.

Souper Salad's motion for sanctions was directed against defendants Prime and K–P and their counsel. Souper Salad argued that Whorton was injured as early as July 24. Defendants and their counsel knew or should have known before announcing ready for trial that she would be unavailable. No one informed the trial court or Souper Salad of Whorton's nonavailability until twenty-five days after the injury; seventeen days after defendants announced ready for trial; seven days into the trial, after Souper Salad had presented its entire case and defended a motion for directed verdict; and two days after the parties travelled to Dallas to take the deposition of a defendants' witness. Defendants' counsel learned from Prime, Whorton's employer, that Whorton was unavailable on August 13, four days into the trial. Yet counsel further delayed informing the trial court or Souper Salad until four days later. Souper Salad contended that defendants' excuse of surprise by Barshick's recanted testimony was a ruse. Souper Salad asserted that Barshick's trial and deposition testimony were substantially the same.

In response, Prime and K–P's basic argument was that their counterclaim trial strategy did not initially depend on the injured witness. They planned to rely on the deposition of Barshick to establish that he had promised to keep a Souper Salad restaurant on the leased premises. Defendants' counsel did not consider Whorton's testimony critical and so did not guarantee her availability at the time of announcing ready, beyond assuring that she was still employed by Prime. Prime and K–P argued that, on August 11, Barshick unexpectedly recanted his deposition testimony and denied making any promise. Defendants' counsel then realized it would need Whorton's testimony after all. It took until Friday, August 14, to confirm Whorton's nonavailability and get her affidavit and until August 17 to file the affidavit and move for continuance or mistrial.

The trial court imposed the monetary sanction only against Prime and not K–P or counsel, presumably because Prime was Whorton's employer and the court believed that counsel was not timely informed by Prime that Whorton was unavailable.

■■■ Mandamus is an extraordinary remedy, available only in situations of manifest and urgent necessity. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). A court of appeals acts in excess of its writ power when it grants mandamus relief absent these circumstances. *Id.*

■■■ A fundamental tenet of mandamus practice is that a party seeking mandamus relief must establish the lack of an adequate remedy by appeal. *Walker*, 827 S.W.2d at 840. The cost or delay of having to proceed through trial and the appellate process does not make appeal an inadequate remedy. *Id.* at 842. When mandamus is sought to vacate a monetary sanction order, the uncertainty of actual reim-

bursement after winning an appeal does not render appeal inadequate. *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991).

■ However, a monetary sanction may be so severe that it threatens a party's continuation of litigation. In that case, appeal is an adequate remedy only if payment is deferred until final judgment when the party can supersede the judgment and perfect an appeal. *Id.* at 929. *Braden* sets out the procedure for the trial court to use when a party contends that a monetary sanction precludes the party's access to court:

> [T]he district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) makes express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect.

*Id.*, quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 882–883 n. 23 (5th Cir. 1988).

■ Prime does not contend that prejudgment payment of the sanction would prevent it from continuing the litigation. Therefore, staying the payment of the sanction is not necessary, and Prime has an adequate remedy by appeal. In such circumstance, we are without power to issue a writ of mandamus. *Johnson, supra.*

■ Prime argues that the *Braden* procedure is unconstitutional under the Equal Rights provision of the Texas Constitution. TEX. CONST. art. I, § 3. Prime maintains that to require well-off parties to pay monetary sanctions immediately while permitting poor parties to delay payment violates equal protection principles. However, Prime has cited us to no authority that the well-off are a suspect class or that a fundamental right is implicated. Therefore, the rational relation standard applies. *See Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex.1981). The *Braden* procedure is rationally related to the legitimate state interest of the orderly management of the court system. The procedure preserves the effectiveness of monetary sanctions as a control mechanism

for the court. At the same time, it protects those sanctioned parties who would be forced out of court if required to pay a sanction before judgment and appeal.

Prime further argues that we can issue mandamus to vacate a "void" order even when there is an adequate remedy by appeal. In *Dikeman v. Snell*, 490 S.W.2d 183 (Tex.1973) (orig. proceeding), the Court issued a mandamus to vacate a nunc pro tunc judgment. Being entered after the trial court lost jurisdiction, the judgment was "void on its face." The Court held, "An order which proclaims it voidness upon its face needs no appellate action to proclaim its invalidity." *Id.* at 186, quoting *Fulton v. Finch*, 162 Tex. 351, 346 S.W.2d 823, 830 (1961) (orig. proceeding); *see also State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 482 (Tex.Crim.App.1985) (orig. proceeding). We find that the sanction order in the present case is not void on its face.

In *D.A. Buckner Constr., Inc. v. Hobson*, 793 S.W.2d 74 (Tex.App.—Houston [14th Dist.] 1990) (orig. proceeding), this court vacated a sanction order issued by the trial court sua sponte without notice and without any motion for a monetary sanction. *Id.* at 76. In contrast, on August 18, at the motion for mistrial hearing, Souper Salad requested that the mistrial be conditioned on its recovery of attorneys' fees and costs. On September 24, Souper Salad filed its motion for sanctions. Defendants responded to the motion. The trial court held a hearing on September 29. The trial court heard argument from both sides before granting Souper Salad's motion. On October 26, Prime filed a motion to reconsider the sanction and another hearing was held on November 13. The trial court did not issue its order sua sponte but in response to Souper Salad's motion. We find that Prime had adequate notice and opportunity to be heard and that the sanction order was not void for want of due process. *Cf. Owens–Corning Fiberglas Corp. v. Caldwell*, 822 S.W.2d 143, 150 (Tex.App.—Houston [1st Dist.] 1991) (orig. proceeding) (due process violated and sanc-

tion order void when trial court failed to implement *Braden* procedure).

Prime argues that the sanction order is void because the trial court exceeded its authority. However, *Braden* held that the issue of whether a sanction was authorized by rule or law, as well as the factual basis for and propriety of the sanction are properly matters for appeal. *Braden*, 811 S.W.2d at 930; *see also Susman Godfrey, L.L.P. v. Marshall*, 832 S.W.2d 105, 109 (Tex.App.—Dallas 1992) (orig. proceeding) (inquiry into authority for sanction of $25,-000 fine is matter for appeal). Even *Dikeman*, which issued mandamus to vacate a "void on its face" judgment, counseled that the better practice in seeking relief from allegedly invalid orders is to use the appellate process. *Dikeman*, 490 S.W.2d at 186. This is particularly so when there is doubt as to whether the judgment is void, or where there are disputed fact issues. *Id.*

We believe that *Braden* now instructs that when a relator has an adequate remedy by appeal, then the issue of whether a trial court abused its discretion by exceeding its authority is properly a matter for the appeal. Absent a "void on its face" order or clear violation of due process, further inquiry by mandamus proceeding is premature.

We find that Prime has an adequate remedy by appeal, that the sanction order is not void on its face, and that Prime was afforded due process. We deny the writ and rescind our order staying payment of the sanction.

ROBERTSON, Justice, dissenting.

On September 29, 1992, the trial judge ordered that relators pay, as sanctions, on or before December 1, 1992, plaintiff's attorney's fees in the sum of $26,357.50, $5,31699 as expenses and an additional $1,950 as attorney's fees in connection with the sanctions proceeding.

While I recognize that relators have not alleged that the payment of this sum will restrict its access to the courts, I believe this is a "more severe sanction" that should be deferred until an appealable judgment is rendered. *Braden* at 929. Be-

lieving that orderly administration of justice requires no less, I respectfully dissent.