Katherine Helen ARNOLD, Theresa Ann Case, Daniel Frank Gohl, Carey Lynn Hattic, Kathleen Martha Kern, Justin Matthew McCoy, Marc Evan Salomon, Kelly Severin, Susan L. Svatek, Denise Lynette Szymczak, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 3–87–249–CR through 3–87–253–CR.

Court of Appeals of Texas, Austin.

Sept. 27, 1989.

Rehearing Denied Oct. 25, 1989.

Cynthia L. Biggers, Willie Schmerler, Austin, for appellants.

Ken Oden, County Atty., Alia Moses, Asst. County Atty., Austin, for appellee.

Before SHANNON, C.J., and POWERS and SMITH *, JJ.

EARL W. SMITH, Justice (Retired).

A jury found appellants guilty of the misdemeanor offense of disruptive activity on a university campus. Tex.Educ.Code Ann. § 4.30(a), (b)(2), (1972). The trial court assessed a punishment of 3 months in jail and a fine of $200.00 against appellants Arnold, Case, Kern, Salomon, Severin, Svatek, and Szymczak. The court set punishment at five months in jail and a $200.00 fine for appellants Gohl, Hattic, and McCoy. (Note: Unless otherwise specified, the term "appellants" will refer to all ten of the persons named in the case style.) We will affirm the judgment for each appellant.

The State's witnesses testified that at around 7:45 a.m. on the morning of Monday, October 20, 1986, appellants were part of a group that entered the campus office of the president of the University of Texas at Austin; that one of the individuals quickly announced that the group was "taking over" the office; that the intruders then proceeded to barricade the doorways and disconnect the office's telephones and computers; that they took care to avoid damaging the office furnishings but that some minor damage did occur; and that at around 8:15 a.m. the campus police forcibly entered the office and arrested the intruders, who resisted nonviolently.

Each appellant took the stand and testified that he or she did in fact engage in the conduct alleged; that he or she engaged in

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

Tex.Gov't.Code Ann. § 74.003 (1988).

the conduct as a protest of the university's investments in corporations doing business in the Republic of South Africa and in protest of the university's board of regents refusing further agenda time to groups urging divestment; and, that he or she believed that his or her actions would be authorized by international law as necessary to end apartheid, the official policy of racial separation in South Africa, a "crime against humanity" under international law.

In points of error one through four, appellants contend that the trial court erred in: (1) refusing to allow evidence of the legal justification of "necessity"; (2) refusing to charge the jury on the legal justification of "necessity"; (3) refusing to allow evidence of the legal justification of "public duty"; and, (4) failing to charge the jury on the legal justification of "public duty." We have discussed these four points in our opinion handed down this day in cause no. 3–87–254–CR, Chester Lewis Wilson v. State, and we overrule appellants' first four points of error for the reasons given in that opinion.

■ In point of error five, appellants contend that the trial court erred in failing to admit evidence on the issue of "willfulness." More precisely, appellants' complaint is that the trial court refused to allow testimony from Dale Robertson, former chair of the University of Texas "Steve Biko Committee," about events on campus and their relationship to state, national, and international events just prior to the action forming the basis of these charges. His testimony was offered to give the jury "greater insight" into each appellant's mental state immediately prior to and at the time of the acts in question. Similarly, appellants complain of the exclusion of the testimony of Michael Tigar, Chester Wilson, Sevi Letso Matabane, and Senator Gonzalo Barrientos as to these same matters and offered for the same purpose.

Appellants were allowed to testify at length as to the items about which the above witnesses would have testified. Furthermore, these witnesses could not have testified as to each appellant's state of mind—each appellant's testimony was necessary for that. In *Winegarner v. State,* 505 S.W.2d 303, 305 (Tex.Cr.App.1974), the court held that a psychiatrist could not give his opinion based on hearsay as to appellant's intent at the time of the offense. The court cited McCormick and Ray, Texas Law of Evidence, § 1428:

In general, our courts permit a witness to testify as to his own intention or other state of mind where the same is material. . . . On the other hand, decisions purporting to apply the opinion rule, uniformly exclude the testimony of a witness as to another person's state of mind. It is said that since one person cannot possibly know another's state of mind, his testimony is necessarily based on conjecture.

Finally, there was a great deal of undisputed testimony about conditions in South Africa, the events on campus leading to the events of October 20, and various actions that had been taken to persuade the regents to divest. The excluded testimony was cumulative of what had been presented. We overrule this point of error.

In point six, appellants argue that the trial court erred in taking jurisdiction and in overruling appellants' amended motion to quash the information for failure of the State to plead and negate the statutory exception. This point is discussed in *Wilson v. State,* 777 S.W.2d 823, and is overruled for the same reasons.

■ In point seven, appellants argue that the trial court erred in overruling appellants' motion to quash the information for the unconstitutional overbreadth and vagueness of Tex.Educ.Code § 4.30, which violates the Fourteenth Amendment and Tex. Const. Ann. art. I, § 8 (1984).

Appellants' motion to dismiss said:

Section 4.30 of the Texas Education Code and the charging instrument are impermissibly vague and overbroad and, as such, violate defendant's constitutional rights as articulated in the First, Fifth, and Fourteenth Amendments to the United States Constitution.

The motion does not invoke the Texas Constitution at all; nor does it specify the precise manner in which § 4.30 is overbroad and vague. The record shows that counsel, in arguing the motion, basically contended that two university activities, such as teaching and using teaching time to do an administrative function, such as teacher evaluations, interfered with each other and so would be criminal under the statute, although both were authorized university activities. However, this example, and others, failed to deal with the statute's requirement of "seizing control" other than contending that the statutory language was vague. Counsel do not advance any precise legal theories nor do any more than assert that the statute violated the Texas Constitution.

As we held in *Wilson*, this motion was too general to apprise the trial court of the precise nature of the complaint under either the Texas or U.S. Constitutions. Any argument under either constitution was therefore waived. Tex.R.App.P.Ann. 52(a) (Supp.1989): *Thomas v. State*, 723 S.W.2d 696, 700–01 (Tex.Cr.App.1986). We overrule point seven.

### RECUSAL

In points of error eight through eleven, appellants argue that the trial court erred (1) in denying a timely written *pro se* motion to recuse filed by appellants Gohl, Hattic, Kern, Severin, and Szymczak; (2) in not allowing another judge to hear these motions; (3) in refusing to submit herself to examination regarding the allegations in the recusal motion; and (4) in not granting the remaining appellants' motion for leave to adopt motions of co-defendants. The record reflects that *only* Gohl, Hattic, and Severin filed written motions. Other defendants moved the court for leave to adopt any objections or motions filed by any other defendants. The court denied this general motion. Gohl filed a handwritten *pro se* motion for recusal and continuance on July 28, 1987. On July 30, 1987, he filed a *pro se* "Amended Motion for Recusal." Hattic and Severin also filed, on July 30, 1987, *pro se* recusal motions, styled "Amended Motion for Recusal," although

they had not previously filed any such motions. The amended motions of these three defendants contain identical allegations. Before proceeding to discuss the merits of these motions, we must decide whether in a criminal case there is provision for the filing and hearing of recusal motions. That is, do Tex.R.Civ.P.Ann. 18a (Supp.1989) and/or the Code of Judicial Conduct, mandate that judges of a county court-at-law in criminal cases recuse themselves, or on filing of a recusal motion, refer that motion to the area presiding judge?

### GROUNDS FOR RECUSAL

The general understanding in Texas law, for at least a century, had been that the only grounds for disqualification of a judge were those set out in article V, § 11 of the Texas Constitution. In 1979, a Texas Supreme Court opinion referred to the constitutional basis for disqualification of a judge, art. V, § 11, as being implemented by Tex.Rev.Civ.Stat.Ann. art. 15, Tex.Code Cr.P. art. 30.01, and Canon 3 C of the Code of Judicial Conduct. *McLeod v. Harris*, 582 S.W.2d 772, 774 fn. 3 (Tex.1979).

The Supreme Court's decision has been criticized as broadening the constitutional grounds for disqualification. *See* Calvert, Disqualification of Judges, 47 Tex.Bar J. 1330 (1984); Schwab, Who Determines Judicial Disqualifications?, 43 Tex.Bar J. 197 (1980). Judge Calvert argues that, prior to the adoption of Canon 3 C(1) of the Code of Judicial Conduct, Texas appellate decisions, *both* civil and criminal, spanning more than a century of judicial history, had repeatedly held that the constitutional grounds of disqualification were both *inclusive* and *exclusive*, and that a judge who was not constitutionally disqualified owed a duty to hear a given case.

Judge Calvert notes that the Court of Criminal Appeals had firmly adhered to the rule that only constitutional disqualification can prevent a judge from sitting in any criminal case. *Id.* at 1332 (citing *Williams v. State*, 492 S.W.2d 522, 523–24 (Tex.Cr. App.1973); *Berry v. State*, 203 S.W. 901, 902 (Tex.Cr.App.1918)). Calvert notes that

the court has held that the interest which would disqualify a judge cannot be one of mere bias or prejudice. Calvert argues that Canon 3 C(1) and Rule 18a were "a clear break from the constitutional limitations in art. 5, § 11," and that a century of holdings that the constitutional grounds of disqualification were both "inclusive and exclusive" was wiped out in favor of an undefined category of disqualifications, included in the phrase, "any disability of the judge." Calvert, *supra* at 1334. He notes that, under Canon 3 C(1) and Rule 18a, where a motion was filed to recuse a judge, a new judge could be assigned, "and new motions could have been filed, *ad infinitum.*" *Id.*

Calvert also argues that the Legislature cannot add to the constitutional qualifications of public officials. Then, he cites *Manges v. Guerra*, 673 S.W.2d 180 (Tex. 1984), stating that the opinion "made short shrift of the matter of recusal":

> After this court rendered its judgment in this cause, the Guerras filed motions that three of the justices be recused. Each of the justices is qualified under Article V, Section 11, of the Texas Constitution to serve. Prior to any further proceedings in the case and in compliance with the provisions of Rule 18B of the Texas Rules of Civil Procedure, each challenged justice certified the matter to the entire court. The court then decided the motions by a vote of the justices of the court sitting en banc, except that the challenged justice did not sit when his challenge was considered. The court has concluded that each motion to recuse should be and is denied.

*Id.* at 185. Calvert says that the opinion seems to him to leave not the slightest doubt that the only grounds for disqualification of a judge are those listed in art. 5, § 11 of the Constitution, and that the grounds set out in Canon 3 C(1) should not be considered in the future as grounds for disqualification. He concludes:

> Unless and until the constitution is amended to give the Supreme Court of Texas authority to add by rule grounds for disqualifying judges, in addition to those contained in Article 5, § 11, trial

judges *should* recuse and disqualify themselves in situations specified in Canon 3C(1), Code of Judicial Conduct, and appellate judges and justices should also do so when their votes are not necessary to a decision; however, judges at neither level are *required* to do so.

Calvert, *supra* at 1339 (emphasis in original).

## RECUSAL—CRIMINAL CASES

In *State ex. rel. Millsap v. Lozano*, 692 S.W.2d 470 (Tex.Cr.App.1985), Judge Onion's majority opinion traces the history of the law of disqualification and recusal in Texas. First, he states the common law and Texas constitutional law of disqualification:

> "The common law of disqualification of judges was clear and simple: a judge was disqualified for direct pecuniary interest and for nothing else * * * Blackstone rejected absolutely the possibility that a judge might be disqualified for bias as distinguished from interest * * * *.*
>
> In short, English common law practice at the time of the establishment of the American court system was simple in the extreme. Judges disqualified for financial interest. No other qualifications were permitted."

Interpretive Commentary, Article V, § 11, Texas Constitution. See also 1 R. McDonald, Tex.Civil Practice, § 1.22.1 (1965).

All Texas state constitutions since 1845 have expressly limited the grounds for the disqualification of judges. See Tex. Const., Art. IV, § 14 (1845); Tex. Const., Art. IV, § IV (1861); Tex. Const., Art. IV, § 12 (1866); Tex. Const., Art. V, § 11 of the present Constitution (1876), specifically enumerates the only grounds for disqualification.

Article V, § 11 of the Texas Constitution provides in part:

> "No judge shall set [sic] in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be

prescribed by law, or when he shall have been counseled in the case."

*Lozano*, 692 S.W.2d at 474. He then cites Tex.Code Cr.P.Ann. art. 30.01 (1965) and Tex.Rev.Civ.Stat.Ann. art. 15 (repealed 1985, now Tex.Govt.Code § 21.005) and article 2378 (now Tex.Govt.Code § 21.005):

4. Article 30.01, V.A.C.C.P., provides:

"No judge or justice of the peace shall set [sic] in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or party injured may be connected with him by consanguinity or affinity within the third degree."

5. Article 15, V.A.C.S., provides:

"No judge or justice of the peace shall set [sic] in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case."

6. Article 2378, V.A.C.S., provides:

"No justice of the peace shall set [sic] in any case where he may be interested, or where he may be related to either party within the third degree by consanguinity or affinity."

*Lozano*, 692 S.W.2d at 475, fns. 4–6.

Judge Onion then notes that it has been held that the constitutional grounds of disqualification are both *inclusive* and *exclusive*—that they specify *all* the circumstances that forbid a judge to sit and, under this line of cases, if the question of disqualification is raised, the determination of the issue is made by the judge sought to be disqualified, stating:

"It is not necessary under either the Texas Constitution or the Code of Criminal Procedure that the judge, claimed to be disqualified, seek an independent determination of his impartiality in the cause by another judge. 21 Tex.Jur.3rd Crim.Law, § 1863, p. 773; *Zima v. State*, 553 S.W.2d 378 (Tex.Cr.App.1977)."

*Id.* at 475.

Judge Onion proceeds to quote Canon 3 C of the Code of Judicial Conduct adopted by the Supreme Court in 1974. Tex.Rev. Civ.Stat.Ann. art. 320a–1, app. 13 (now, as amended, Tex.R.Civ.P.Ann. 18b, "Grounds for Disqualification and Recusal of Judges," effective January 1, 1988):

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to, instances where:

(a). He has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b). He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c). He knows that he, individually or a as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or is a party to the proceedings, or any other interest that could be substantially affected by the outcome of the proceeding...."

*Id.* at 476. He notes that similar provisions of the American Bar Association's Canon of Judicial Ethics had been referred to by Texas Courts, but with holdings that these Canons, at the time, did not have the status of Texas law.

*Lozano* discusses *McClenan v. State*, 661 S.W.2d 108 (Tex.Cr.App.1983). In *McClenan*, the court held that although the trial judge erred in not following Tex.Rev. Civ.Stat. art. 200a, § 6 (now Tex.R.Civ.P. 18a), the complete record showed no bias on the part of the judge. The Court held that before the statute comes into play in criminal cases, an obvious requirement is that the motion to recuse must allege proper grounds upon which the motion could be sought in the first place. *Id.* at 110. Judge Onion states in *Lozano: "First, it is not clear that the rule* [art. 200a] *applies to criminal cases.* Cf. *McClenan v. State*, supra, footnote no. 2." *Lozano*, 692 S.W.2d at 481 (emphasis added).

Footnote 2 of *McClenan* reads:

Currently no rule of criminal procedure exists setting forth the requirement for a motion based on Art. 200a, § 6. We invite the legislature to set up strict requirements for such a motion, i.e.: sworn motion setting forth prima facie proper grounds, to be filed before trial or as soon as the issue is presented. Tex.R. Civ.Pro. 18a applies in civil cases and can furnish guidance for a criminal rule. However, a more precise and detailed criminal rule would be of more help to judges and lawyers alike. See Schwab, "Who Determines Judicial Disqualification?", 43 Tex.B.J. 197 (1980).

*McClenan,* 661 S.W.2d at 110.

■ The filing of a motion to recuse, in itself, does not disqualify a judge. *Chastain v. State,* 667 S.W.2d 791, 795 (Tex. App.1983, pet. ref'd). Texas Gov't. Code § 74.059, (effective Sept. 1, 1987) simply states that the filing of a recusal motion requires all courts, including county courts at law, to refer a recusal motion to the presiding judge of the administrative district and request him to hear the motion. However, § 74.059 does not state that it applies to criminal cases; nor does it set up any procedural guidelines for the time of the filing of the motion, service of the motion, or the contents of the motion.

■ In *Ricondo v. State,* 657 S.W.2d 439, 446–447 (Tex.App.1983, no pet.), the court held that the only references to the disqualification of a judge in the Code of Criminal Procedure are found in articles 31.01 and 31.02; that the Code of Criminal Procedure sections do not require that a determination of disqualification be made by another judge; and, that no criminal case had ever been reversed for non-compliance with art. 200a. See also *Ex parte Largent,* 144 Tex.Crim. 592, 162 S.W.2d 419, 426 (1942). In *Crawford v. State,* 719 S.W.2d 240 (Tex.App.1986, no pet.), the court held that the only grounds for a mandatory recusal of the county judge in a criminal case are those specifically enumerated in the constitution and that judicial bias must be of such a nature as to deny the defendant due process. It further held that Rule 18a is inapplicable in a criminal case—stating that the Supreme Court has held that civil rules of procedure apply in criminal cases only when made to do so by statute. *See also* Tex.R.Civ.P.Ann. 2 (1965) (Civil rules apply to civil proceedings.) We agree with the above cited cases. Rules 18a and 18b are civil rules. There is no statute making civil recusal procedures applicable to criminal cases. The courts may not engage in judicial legislation contrary to constitutional law.

## PROCEDURAL DEFECTS

If we were to hold that Rule 18a applies, however, the motions for recusal were inadequate to comply with it. Rule 18a(a) requires:

At least *ten days* before the date set for trial or other hearing in any court other than the Supreme Court, the Court of Criminal Appeals or the court of appeals, any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case. The grounds may include any disability of the judge to sit in the case. The motion shall be verified and *must state with particularity* the grounds why the judge before whom the case is pending should not sit. The motion shall be made on *personal knowledge* and shall set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated.

(Emphasis added.) (The verification requirement was effective January 1, 1988, and thus did not apply to appellants' trial.)

■ The record shows that Gohl filed a motion for discovery, a motion to dismiss, and a motion to quash on July 24, 1987. A motion for continuance was filed on July 28, 1987. In this same motion, Gohl acknowledges the case was set for trial August 3, 1987. The *pro se* motion for recusal was filed July 28 and an amended motion for recusal was filed by Gohl, Severin and Hattic on July 30, 1987. (There is no showing of service of the motions on the prosecutor.) Another motion for continuance was signed August 8, 1987, in which

Gohl said: "This defendant understands that the deadline for filing of pretrial motions has already passed and by this motion requests no additional time for filing of pretrial motion."

The court granted the August 8 motion by order dated August 18, 1987; however, it confirmed in the order that the deadline for filing pretrial motions was August 7, 1987. The court's docket sheet shows that there was a docket call on July 28, 1987, at which one of Gohl's motions for continuance was denied, and that a pretrial hearing was held on July 31, 1987, at which a motion for continuance was granted.

The motions were not timely filed on July 30, 1987, for either a trial setting of August 3, or the docket call on July 28, 1987, at which the motion for continuance was presented, or for the pretrial hearing on July 31. For this reason, rule 18a does not come into play. *Petitt v. Laware*, 715 S.W.2d 688 (Tex.App.1986, writ ref'd n.r.e.); *Coven v. Heatley*, 715 S.W.2d 739 (Tex. App.1986, no writ).

■ The grounds stated for recusal are vague generalities, non-specific, and not shown to be based on personal knowledge. The motion, without alleging any specific grounds or alleging personal knowledge, states that the defendant "can show judicial misconduct, judicial prejudice, conflict of interest of both a financial and personal nature, and/or conflict of interest based on political ambition." The first sub-paragraph of paragraph II of the motion is equally lacking in specificity or personal knowledge; the second paragraph relates to an alleged improper contact with the prosecution in a different cause. The next subparagraph complains that cases were normally assigned on a rotating basis, but that all sixteen defendants involved in the U.T. protesters were assigned to this one judge. A mandatory hearing by another judge was not triggered by these general allegations. *Querner Truck Lines v. Alta Verde Industries*, 747 S.W.2d 464 (Tex. App.1988, no writ).

Although the court denied the motions to recuse, the record shows that she permitted any defendant who desired to do so to offer evidence on the motion.

■ Assuming *arguendo* that the trial court did err in her handling of the recusal motion, we are persuaded nonetheless that any error was harmless beyond a reasonable doubt as to appellants' convictions and punishment. Tex.R.App.P.Ann. 81(b)(2) (Supp.1989). Although we are well aware that, in certain cases, trial court errors require automatic reversal, *see* 3 LaFave and Israel, Criminal Procedure § 26.6(d) (1984), we are satisfied that this is not one of those cases.

Several factors compel our conclusion. First, appellants Gohl, Hattic and Severin took advantage of the opportunity to present evidence on their recusal motion, but they were unable to present any evidence even suggesting bias that might violate due process or raise any other ground of disqualification or recusal. *See Lozano*, 692 S.W.2d at 470. Second, these three appellants testified at trial in their own behalf and forthrightly admitted their guilt of the offense charged. Third, there is no suggestion in appellants' briefs or oral argument that the trial court manifested bias in any way before the jury. And finally, *after* the recusal motion was denied, Gohl, Hattic, and Severin elected to have the *trial court* assess punishment in the event they were found guilty, a rather inappropriate election if they believed the court should recuse herself, or that she was biased or prejudiced. Given these facts, we are unable to see how the substantial rights of these three appellants were harmed in any way by the trial court's handling of the recusal motion.

■ Finally, if we be in error in holding that the trial court did not commit reversible error on the recusal motions, the proper remedy would be to abate the appeals of Gohl, Hattic, and Severin pending hearing of the motions by another judge in accordance with the holding in *Morris v. State*, 692 S.W.2d 109 (Tex.App.1984, pet. ref'd). In this cause such is not necessary.

In view of our disposition of points eight, nine, and ten, we need not discuss point

eleven. We overrule points eight through eleven.

## JURY SELECTION—CHALLENGES FOR CAUSE

In points of error twelve through eighteen, appellants complain of the court's failure to excuse certain prospective jurors for cause. These seven points of error present numerous procedural difficulties. First, there were eleven defendants at trial, who acted together both in their challenges for cause and in exercising peremptory strikes. (Record, p. 913: on challenges for cause, "acting for all defendants"; the State's assertion at trial that the defendants met to exercise their strikes jointly was unchallenged.) The record contains strike lists from the ten appellants before us in this cause. We do not, however, have a list from Beverly Burr, a defendant below who is not before us in this cause.

Appellants complain of five jurors that they were forced to take. Those jurors were identified in the record. At trial, however, defendants asked for *six* additional peremptory challenges. One veniremember (Juror 70) about whom appellants complained at trial as having caused them to use a peremptory challenge because of the court's denial of a challenge for cause, is not complained of on appeal. Two veniremembers about whom appellants complain on appeal had an objection made to them at trial immediately after questioning but were not part of the summary list given when the request for additional strikes was made. We will address the portions of appellants' points that we can, based upon the record.

In order to complain on appeal, a defendant first must have challenged a veniremember for a specific cause and the trial court must have overruled the challenge. *See Payton v. State*, 572 S.W.2d 677 (Tex. Cr.App.1978); Tex.Code Cr.P.Ann. art. 35.-16(a) (1989). He then must show that the trial court's erroneous ruling on his challenge was harmful by showing that he exhausted his peremptory strikes; that the trial court denied his request for additional strikes; that as a result of the court's denial, a juror whom appellant found objectionable was seated; and that appellant would have exercised a strike on the objectionable juror had he one remaining. *Payton*, 572 S.W.2d at 680; *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App.1978). To preserve error, the defendant must show that he was injured or forced to take an objectionable juror. *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980), *cert. denied*, 453 U.S. 928, 102 S.Ct. 890, 69 L.Ed.2d 1023 (1981).

In reviewing a ruling on a challenge for cause, we look to the totality of the prospective juror's responses concerning his qualifications to serve, including such factors as the nature of the questions asked and the juror's ability to express himself in responding to the question. *Porter v. State*, 623 S.W.2d 374 (Tex.Cr. App.1981). We must keep in mind that the trial judge has had the opportunity to observe the prospective juror's demeanor in making those responses.

In the context of jury service, "prejudice" simply means a "prejudgment." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex.Cr.App.1982). "Bias" is "an inclination toward one side of an issue rather than to the other ... [which] leads to the natural inference that [a juror] will not or did not act with impartiality." *Id.* Bias as a matter of law exists if, for example, a juror admits resentment toward a defendant because of some prior contact with the defendant, *Williams v. State*, 565 S.W.2d 63 (Tex.Cr.App.1978), or is related to the State's primary witness, *Burge v. State*, 117 Tex.Crim. 141, 35 S.W.2d 735 (1930). If bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the prospective juror is disqualified. *Anderson*, 633 S.W.2d at 853. We now discuss the veniremembers in question.

■ *Mr. Deitrick (#122) (Point 12).* Appellants complain that Mr. Deitrick should have been excused for cause because of his employment by the University of Texas and because he was biased or prejudiced against them. Appellants have

failed to preserve error with regard to Mr. Deitrick because a review of the strike lists shows that no peremptory challenge was used against him. We overrule this point.

▉▉ *Ms. Barlow (# 18) (Point 16).* Appellants contend that Ms. Barlow should have been excused for cause as she was biased against them because of their appearance. A review of the jury strike lists reveals that, as with Mr. Deitrick, no indication of a peremptory strike against Ms. Barlow appears. However, by her position on the jury list, and the denial of the challenge for cause against her, we can infer that she must have been struck by the defendant who did not appeal because otherwise she should have been seated as a jury member.

Ms. Barlow testified that she had been confused during voir dire about whether the case concerned a "legal" or a "political" issue. A defense statement to the effect that the defense and State were not going to be arguing about the facts of the event seems to have confused several of the veniremembers. She said that she did not know much about politics and was confused as to the relationship between the criminal charge and the types of political issues being explored by the questioning at voir dire.

She said that "of course" she formed a first impression about a person based on appearance, but that such an impression did not control any subsequent relationship with that person. She said that she would be able to follow the court's instructions about which testimony to consider; that she did not think the defendants were bad people because they chose to protest this issue; that she disagreed with their method *if* they broke the law doing it; that she had not made a decision about guilt or innocence based on their appearance; that the evidence and the law as given by the court would be what determined her verdict, not first impressions. It was not an abuse of discretion to overrule the challenge for cause to Ms. Barlow.

▉▉ *Mr. Mooney (# 88) (Point 13).* Appellants claim that Mr. Mooney should

have been excused for cause because he was biased and prejudiced. Their contention is based on a "hanging gesture" that he made with his tie during a break. He explained that the gesture was related to the amount of time spent on voir dire, which became a rather obvious irritant to many of the veniremembers. He said that he had seen this gesture used in the movie *Airplane* in a scene in which a woman was talking for a long, long time, and that the gesture was related only to the time consumption, not an opinion on guilt. He also testified that his business experiences in South Africa would not burden or prejudice his ability to judge fairly and that he had no opinion as to guilt or innocence. Appellants have not shown an abuse of discretion in overruling the challenge for cause to Mr. Mooney.

▉▉ *Ms. Wolf (# 92) (Point 14).* Appellants contend that Ms. Wolf should have been excused for cause because of her employment as an administrative assistant at the University of Texas. She testified that she would listen to the evidence and "go by the letter of the law" in reaching a verdict. With regard to the possibility of President Cunningham testifying, she said that she would listen to all the evidence and remain objective, regardless of the source.

Appellants have failed to show any abuse of discretion in failing to excuse Wolf for cause. The mere fact of her employment with the University, and the possibility of "co-workers" or her ultimate supervisor, President Cunningham, testifying, does not disqualify her. *See Knox v. State,* 744 S.W.2d 53 (Tex.Cr.App.1987) (juror previously employed as police dispatcher and knew several officers scheduled to testify; not disqualified in view of testimony that she could be impartial, would not automatically assume officers would tell the truth and would base her verdict on evidence).

▉▉ *Ms. Avera (# 99) (Point 15).* Appellants contend that Ms. Avera should have been excused because she had an inclination to believe that police officers would tell the truth and would be unable to fairly and objectively evaluate the testimony of a police officer. Ms. Avera testified

that, in evaluating testimony, she hoped that she would give anybody the "benefit of the doubt"; she would intend to, whether or not the testimony came from law enforcement personnel; that it was a "natural inclination" to believe a policeman in a usual situation, for example, on the street, but that court was not the usual situation; that in the usual situation her first inclination would be to believe the law enforcement officer, but in a courtroom she would do her best to weigh the evidence, to listen to it as it was presented; that she had not already judged the "non-police" side wrong; that she had not already decided that the defendants were guilty; and, that she would follow the law that the court gave her.

A distinction must be made between a prospective juror who says that she could never believe that a police officer would lie on the stand, *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App.1978) and a juror who, as a general proposition, believes police officers are more apt to tell the truth or would need evidence to be produced before believing a police officer is lying, *O'Dell v. State*, 651 S.W.2d 48 (Tex.App. 1983, pet. ref'd); *Kennard v. State*, 649 S.W.2d 752 (Tex.App.1983, pet. ref'd). The first juror is biased against the defendant. The second juror is not subject to challenge simply because of that general belief. Ms. Avera falls into the second category. She expressed confidence in the credibility of police officers but did not indicate a belief that they could not lie in court. She made a distinction between situations inside and outside the courtroom. It was not an abuse of discretion to refuse to excuse Ms. Avera for cause.

■ *Mr. McClaren (#48) (Point 17).* Appellants contend that Mr. McClaren should have been removed for cause because he was biased against the appellants and had already formed an opinion as to guilt or innocence. Appellants base their contention on an "outburst" (by McClaren and others) at voir dire and the claim that he said, "I could not be impartial to any of you."

Mr. McClaren, in common with many of the veniremembers, displayed some impatience with the proceedings at voir dire and expressed an opinion that it was inappropriate and distracting to spend so much time on political issues of that point. But, he said that he would do his best to follow the law as set out in the court's instructions and that he would, if so instructed by the court, consider "political" evidence and evidence of the defendants' motivation; that he had not decided that they were guilty at that point.

He said that he had been bothered that on the first day of voir dire the defense asserted that they would prove that the State's version of events was incorrect but then the next day said that they were not arguing that they did not commit the acts in issue. He said further that he did not disagree that apartheid was wrong and that the university should divest, but he thought that the students were attempting to evade responsibility for their actions. He said that he understood that the State had to prove its case beyond a reasonable doubt, and that, if instructed that the State had to prove items one, two and three to show guilt, they proved only one, then whether he personally thought the decision was right or wrong, he would be obligated to find them not guilty. It was not an abuse of discretion not to strike Mr. McClaren.

■ *Mr. Bennett (#14) (Point 18).* Appellants contend that Mr. Bennett should have been excused for cause because he was biased or prejudiced against them based on their appearance. Mr. Bennett said that he did have a negative first impression of people with hair like one of the defendants, but that he would not disbelieve him because his hair is that way. He said that he could view the facts impartially and that he had not decided whether the defendants were guilty; that he could listen to all of the evidence and make up his mind based on that evidence; and that he would follow the law as the judge gave it to him. It was not an abuse of discretion to fail to strike Mr. Bennett.

## JURY SELECTION—DISCRIMINATION

In point of error nineteen, appellants contend that the trial court erred in failing to provide a *"Batson*-style" hearing. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that a defendant may establish a prima facie case of purposeful discrimination in the exercise of peremptory challenges in a particular case by showing: (1) the defendant is a member of a cognizable racial group; (2) prosecutors exercised peremptory strikes to remove prospective jurors of the defendant's race; and (3) the defendant must show that these facts and any other circumstances raise an inference that the prosecution used its peremptory challenges to exclude the prospective jurors based on race. The defendant has the initial burden of establishing that the prosecution purposefully discriminated against members of the defendant's race in the exercise of peremptory strikes. *Henry v. State,* 729 S.W.2d 732 (Tex.Cr.App.1987).

Appellants' *Batson* claim fails. *Batson* explicitly requires that a defendant be a member of the excluded group. *Id.* Appellants complain of the exclusion of blacks as a group. Appellants make no contention that any of them is black. They therefore cannot make out a prima facie case under *Batson* that would then require the State to provide explanations for its peremptory strikes in a hearing.

Appellants also contend that their due process rights were violated because the exclusion of blacks from the jury denied them their sixth amendment right to have a jury that is representative of the entire community. There is some doubt whether appellants properly presented their sixth amendment challenge to the trial court. The specific objection was: "I therefore object to the composition of the jury on the grounds that the prosecution has used peremptory challenges to exclude panel members from the jury on account of their race." That objection was accepted by the Court for all defendants. There was no complaint, however, that the jury was not a fair cross-section. However, we will assume that the point was preserved and answer the merits.

Appellants rely on *Seubert v. State,* 749 S.W.2d 585 (Tex.App.1988, pet. granted), for the proposition that they do not have to be black to challenge the exclusion of blacks from the jury. In this regard, they are correct. However, they also attempt to make *Seubert* stand for the proposition that they have standing to make a *Batson* equal protection complaint, and, we assume, make out a prima facie case of discrimination by showing strikes against blacks. *Seubert* does hold that *Batson* guides the decision and that, except for the same race requirement, *Batson* is a practical model. *Id.* at 588. The court goes on to say that if, despite the State's peremptory challenges, blacks were not significantly underrepresented on the jury compared to their percentage in the group from which the venire was drawn, there would be no harm.

We are not sure the analysis is correct. If the right that the sixth amendment claim protects is the right to a fair cross section, then the logical first step to show a prima facie case would have to be to show deprivation of that right; *i.e.,* that the jury was not a fair cross section. This is different than *Batson's* equal protection focus, and claims under *Batson* that the defendant was discriminated against because of his race because those of the same race were excluded on racial grounds. Then, the logical first step to make a prima facie case would be to show use of peremptory strikes against that racial group.

In any case, our result here would be the same, whether we label it harmless error or a failure to make out a prima facie case. No complaint is made about the composition of the panel from which the jury was drawn. Out of 125 panel members, 11 were identified by the defense as being black. This represents 8.8% of the panel. Out of the six jurors, one was black. This represent 16.7% of the jury. Blacks were not underrepresented on the jury. Therefore, appellants were not deprived of a fair cross-section, and their sixth amendment rights not violated.

We overrule appellants' nineteenth point of error.

## SELF REPRESENTATION

In point of error twenty, appellants complain that the trial court failed to properly admonish the *pro se* defendants about the dangers of self representation. (Gohl, Hattic, Kern, and Szymczak are the four appellants who were *pro se* defendants).

On September 2, 1988, a pre-trial hearing was held. The court told the defendants that they had an absolute right to have an attorney. She explained to them that they would be at a disadvantage because they were not attorneys but would be expected to follow the same procedural rules. She explained that she could not act as their attorney. In response to the assertion by these defendants that they chose to represent themselves because they wanted to express their motivations and interest to the jury, she explained that their motivation could be presented even with an attorney representing them.

There is no set formula for an admonishment about self representation. *Blankenship v. State*, 673 S.W.2d 578 (Tex.Cr.App. 1984). The defendant must be aware of the "dangers and disadvantages" of self representation. In considering the adequacy of the admonishment, and whether the defendant knowingly exercised the right to defend himself, the personal characteristics of the defendant can be considered. *See Martin v. State*, 630 S.W.2d 952 (Tex.Cr. App.1982). These characteristics include age, background, education, and experience. In this case, the defendants were college students. They were politically active and knowledgeable about the cause in which they were interested. They demonstrated a knowledge of other protest movements and should have been aware of the possible consequences of their acts. We hold that, given all the circumstances, the *pro se* defendants were adequately made aware of the danger of self representation.

We affirm the judgments of conviction and sentences of each appellant.